## ANDREWS & BRO'S v. JONES.

1. The mere belief or opinion of a witness is not evidence, but he must state the facts and circumstances upon which he rests his opinion, or from which he draws his conclusion—that the jury may understandingly decide for themselves.

2. Where an agent buys land with the money of his principal, and takes a deed conveying the title to himself, or upon the sale of land thus situated, takes notes for the purchase money in his own name; it is competent for the principal to prove the fact by parol testimony, and assert his title to the land in the one case, and to the money in the other.

3. The depositions of two witnesses were required to be taken at a time and place designated, and if the commission should not be *completely* executed on that day, then the commissioners were to continue from day to day un-

Andrews & Bro's v. Jones.

til it was completed; the deposition of one of the witnesses was taken on the appointed day, and the commissioners certified, that the other witness could not then be examined, because of his engagements elsewhere, consequently the taking of deposition was adjourned to the succeeding day, when the witness was examined. *Held*, that the commission was regularly executed, and that the deposition of the last witness was admissible.

4. Where upon the trial of the right of property, the plaintiff introduces evidence tending to show that the claimant's means were too limited to have purchased the property in question, it is competent for the claimant to prove that his means were ample for that purpose.

5. Where it is competent to establish the fact of agency, either verbally or in writing, and the supposed agent on cross-examination states that he recollected one letter in which he received a remittance, by a check or draft, with instructions as to its application, the answer does not show the amount, date, character of the draft, &c., or the substance of the instructions, and cannot therefore be regarded as a verbal disclosure of the contents of the letter.

6. The creditors of the husband have no greater right than he himself has to the property of his wife not reduced into possession; if therefore the husband, before he is let into the possession of the wife's estate, disclaims, or releases to her guardian the title and possession of the same, and this disclaimer and release is still operative, the property cannot be seized and sold under an execution, at the suit of the husband's creditors.

Writ of Error to the Circuit Court of Dallas.

THIS was the trial of the right of property under the statute. The plaintiffs in error caused a *fieri facias* to be issued in 1842, on a judgment recovered by them in the circuit court of Dallas, against the goods and chattels, &c. of John V. F. Walker, for the sum of $14,177 78. This *fi. fa.* being placed in the hands of the sheriff, was levied by him on sundry slaves as the property of the defendant therein, and the defendant in error interposed a claim to the same in due form of law. An issue being made up to try the right, the cause was submitted to a jury, who returned a verdict for the claimant; on which, judgment was rendered against the plaintiffs for costs.

From a bill of exceptions sealed at the trial, it appears that the plaintiffs having adduced as evidence the execution and papers in the cause in which the judgment was rendered,

showed that the indebtedness of the defendant in execution was founded on the indorsement of a bill of exchange, drawn by G. J. S. Walker, on Messrs. Butler & Clay of New York, at four months sight, and dated on the 1st January, 1837. Plaintiff also proved, that G. J. S. W. and the defendant in execution, were the nephews of the claimant, and that the latter was also her son-in-law—having married her daughter Eliza in the city of New York, in August 1836. The claimant and her daughter were the widow and daughter of Seaborn Jones, deceased, late of Georgia, each of whom received, upon a distribution made of decedent's estate, under his will, a share, estimated in March, 1819, at $29,704 58—the share allotted to the daughter was her portion of undivided lands, valued at $17,940 09; thirteen slaves, valued at $5,-750, and funds in the hands of A. S. Jones, the executor, $6,014 58, making $29,704 67. The testator died in 1815, and a division of his estate was decreed in 1819—the claimant acting as the guardian of her daughter.

In the deposition of A. S. Jones, which was taken at the instance of the plaintiff, the witness states that he does not "believe that Mrs. E. Jones or her said daughter Eliza had any other property than that acquired from the estate of his father." This was objected to and excluded on motion of the claimant.

It was also proved by the plaintiff, that the principal part of the lands of the testator's estate had been sold, and the daughter's share received by her mother: "they were mostly contracted to be sold previous to the marriage of Eliza;" after her marriage, herself and husband then signed blank deeds which they forwarded to Georgia, to be filled up, to one Jenkins, who had been appointed an agent by the claimant, for the sale of the unsold lands.

Plaintiffs next gave in evidence a deed of trust executed by G. J. S. W. to J. A. Campbell, for the benefit of D. Chandler, and J. V. F. Walker, and proved that a public sale took place under the deed, at which J. V. F. W. bid off the slaves in controversy, and others, embracing nearly all the slaves, conveyed by the deed of trust.

To show the extent of the pecuniary means of J. V. F. W. the plaintiff next adduced a deed, purporting to convey by

G. J. S. W. and J. V. F. W. "the Walker's Cotton Press, and the premises pertaining thereto, to M. J. Kenan, for the consideration expressed of $177,200, and dated in May, 1836; also, a quit claim deed to the same grantee for another parcel of ground adjacent to the cotton press.

It was also proved, that the slaves remained on and cultivated the same plantation on which they were living when the sale under the deed of trust took place, in May, 1839, from that time up to the end of the year of 1840. Evidence was also adduced tending to show that J. V. F. W. possessed and controlled the plantation as owner, or joint owner with the claimant.

Plaintiffs also proved, that the claimant had between seventy-five and one hundred slaves, including those in controversy, with a valuable plantation of 12 or 1500 acres in extent, besides a good dwelling house on another small tract of land; and that J. V. F. W., his wife and the claimant, had, since the marriage of the two former, lived together.

On the part of the claimant, it was proved that J. V. F. W. previous to his marriage, was a young man of very limited means. In 1834, claimant remitted to him sums of money from time to time, with which he purchased sundry lots in Mobile, which he sold at some profit—always taking and making the deeds in his own name. G. J. S. W. contracted in 1834, for the lot on which he designed to erect a "cotton press," for the sum of 50,000—but not having money enough to carry out his views, he borrowed from the claimant $30,-000, under an agreement that he should complete and make sale of his improvement, as soon as it could be done profitably, refund the money she had thus loaned him, and allow her one half the profits of the enterprise, for the use of the same. Though this agreement was made with the claimant, the money came through the hands of her agent, J. V. F. W.

G. J. S. W. in order to secure the payment of the sum thus borrowed of the claimant, executed to J. V. F. W. a deed in fee simple for an undivided half of the cotton press. The reason a conveyance was made to the latter instead of his principal, was, because the former was in Mobile, and the latter in Georgia, and consequently it would be more conve-

nient to obtain the deed of the agent.   G. J. S. W.  sold the
press to M. J. Kenan for his  slaves, land, &c. which was es-
timated at $177,200, and J. V. F. W. united with him in a
conveyance accordingly.

To all the testimony going to show that J. V. F. W. acted
as the agent of the claimant, where he made or received deeds,
&c. in which his agency is not disclosed, the plaintiffs object-
ed, but their objection was overruled.

G. J. S. W. testified, that after the sale of the press, he was
indebted to the claimant $30,000 for the loan, and $28,-
376 98, her share of the profits, and executed therefor eleven
notes for $5,000 each, and one for $3,376 98.  All these notes
were made in the spring of 1836, payable to J. V. F. W.
though the money due thereon was *bona fide* the property of
the claimant.    Plaintiffs objected to this latter evidence,
because it contradicted what was shown by the face of the
notes.

The same witness further stated, that he was urged by J.
V. F. W. as the agent of the claimant, to include in the deed
of trust to J. A. Campbell, not only the debts due to Chandler,
but the two of the twelve notes mentioned above, which the
deed provides for, and that as it respects these notes, the deed
was for the benefit of 'the claimant.    To this testimony the
plaintiffs objected, as far as it contradicted the written evi-
dence, but his objection was overruled.

J. V. F. Walker testified, that he bid off the slaves at the
trust sale as the agent of the claimant, and bills of sale were
made to her by the trustee's agent, who conducted the sale;
that she paid for them in part with cash, and made arrange-
ments with Chandler, to whom the principal debt secured by
the deed of trust, was coming for the residue.    Witness ne-
ver had any right to, or connection with these slaves other-
wise than as agent for the claimant—and there was other tes-
timony corroborating the witness's denial of control over the
slaves, otherwise than he stated.

It was proved that Mrs. Walker had been expensively ed-
ucated, and that some portion of her estate had been lost by
a bank failure, previous to her marriage.   *Further*, that she
refused to marry her husband without her mother's consent,
and the latter withheld her consent until the parties agreed

that she should never be called to an account as the guardian of her daughter, thereupon the husband and wife, previous to their marriage, did consent and agree accordingly. In pursuance of this agreement, the husband, in December, 1836, made a bill of sale for six slaves, for the consideration expressed, of $2500, though no money was paid. These slaves had been sent to J. V. F. W. to hire out, when he was acting as the agent of the claimant in Mobile, and were a part of those which had been distributed to Mrs. W. from her father's estate. It was proved that the claimant had paid about $20,000 of security debts for her son-in-law in Mobile—of which about $2500 was paid in money, and the remainder by real estate which he had transferred to her. Mrs. W. was an only child of the claimant, the latter was about sixty-five years old, and J. V. F. W. at the time of the trust sale was insolvent.

The claimant had used some of the notes which she received upon the sale of the press, other than those provided for by the deed, in the purchase of property and for other purposes. There was no evidence showing that the claimant had ever settled her account as the guardian of her daughter, or that she had set apart, or given up to the latter any property, either before or after her marriage.

The complainant offered to read as evidence the deposition of D. Chandler, taken at her instance. The notice to the plaintiffs stated that the commission would be executed "on the 27th day of March, A. D. 1843, and if not completed on that day, to continue from day to day until completed." The commission is not set out or recited in the bill of exceptions, but the commissioner certifies, that in consequence of Mr. Chandler's presence being required in court, he was unable to examine him on the 27th March, 1843, and therefore postponed his examination until the next day, when, between the same hours, and at the same place he examined him, &c. To the reading of this deposition the plaintiffs objected, because it had not been taken conformably to the notice and commission, but the court overruled the objection and permitted the same to be read, although the plaintiff did not appear, or cross examine the witness.

59

A part of the deposition of the witness is as follows, viz : "Deponent, on being further interrogated states, he has always understood that Mrs. Jones was a lady of large property. He has thus understood from general reputation—from information received from his acquaintances in Augusta, where she formerly lived—from information received from members of her own family, and from deponent's own knowledge of her means." To the admission of this part of the deposition, the plaintiffs objected, on the ground that it stated mere hearsay, and the court sustained the objection, so far as the witness professed to speak from hearsay, or information derived from others, but admitted so much as he stated from his own knowledge.

I the course of J. V. F. W's examination, he was asked by the plaintiff if he acted as the claimant's agent under a verbal, or written authority ; to which he answered that his authority was verbal, though he had sometimes received letters making remittances of money, on which a check .or draft would be written above, and instructions given below, directing its use. Witness recollected at least one such letter, but he did not know what had become of it—he took no special care of it—had never made a special search for it, though he had often looked over his papers (which were not numerous,) and was certain it was not among them, but was lost or destroyed. Plaintiffs moved to exclude all that the witness said in respect to the contents of the letter, because it was not produced, or its absence sufficiently accounted for ; but this motion was overruled.

The court, among other things, instructed the jury, that if J. V. F. Walker's connection with, or control over the slaves in question was as the claimant's agent, in good faith, then her title was not thereby prejudiced. But if by a fraudulent contrivance, the money or any part of it was furnished by him, and his acts in respect to the slaves were in his own right, either in whole or in part, and the agency, was merely pretended, then they were subject to his debts.

*Further:* A man acquires by marriage a title to all the personal estate of his wife, of which she is in possession, and a right of property in her bonds, notes, &c., and such other things as he can obtain by suit, if their payment or delivery

is refused on demand. To invest the husband with a perfect title in the personal goods of the wife, and make them liable to the satisfaction of executions against him, there must be *a reduction into possession.* The court here explained what was meant by reducing into possession in such a case. Whether the wife is a minor or not, if her property is in the hands of a guardian, the husband's ownership in her goods never begins until the guardian voluntarily surrenders them up, or is made to do so by suit—in respect to her money not until the guardian accounts voluntarily or by coercion. So, if the money with which the slaves were purchased, was the money of Mrs. Walker, yet if it remained in the claimant's hands —never having been accounted for by her, they were not subject to the plaintiffs' execution. But if the accounting, or settlement by the guardian has taken place, and is kept concealed for the purpose of defrauding the creditors of J. V. F. W., or other improper motive, then the jury should find for the plaintiff.

The learned judge doubted whether the agreement made between the claimant and her son-in-law, and his wife, previous to their marriage, could be supported if the two latter objected to it; but it is valid so long as they think proper to abide by it, and the creditors of the husband cannot complain of it. But if that agreement was a mere contrivance to cover the property in the claimant's name for J. V. F. W's benefit, then it was void.

*Lastly:* If the jury should believe that the money of the son-in-law entered to any extent into the purchase of the slaves, then they should find them wholly subject to the execution. To these several charges, it is stated, that no exception was taken, and they have only been noticed because they are referred to in what follows.

The plaintiffs' counsel prayed the court to charge the jury as follows: 1. If the claimant was the guardian of her daughter previous to her marriage, and the latter married before she attained her majority, then the claimant could not make with them a valid contract, such as is proved. 2. If the claimant was still the guardian of her daughter, and had never settled her guardianship account, but mixed her daughter's funds and property with her own, so that they could not

be distinguished, the plaintiffs had a right to have their execution levied on the property, and cause it to be sold, as the property of J. V. F. W. 3. The claimant's consent to the marriage of her daughter would not support the agreement of the husband to renounce the daughter's estate to the claimant, and such an agreement could not be supported against those who were his creditors at the time it was entered into. To the refusals to charge as prayed, as well as the other decisions objected to, the plaintiffs except, &c.

R. Saffold, for the plaintiff in error, made the following points: 1. The belief of A. S. Jones, that the claimant, nor her daughter, had any other property, than that they respectively acquired under the will of S. Jones, deceased, was competent evidence, and should not have been excluded. His means of information upon the subject—his relationship, &c. made his belief altogether satisfactory. 2. The court below should have sustained the various objections to the testimony of the Walkers. [1 Ala. Rep. N. S. 160, 280, 436; 2 Id. 579, 588-9, 598; 7 Greenl. Rep. 435; 2 Gill & J. Rep. 223; 7 Ala. Rep. 641, 679; 5 Ala. Rep. 770.] 3. Chandler must have testified from information and belief, even where he professes to speak from his own knowledge; besides his deposition was not taken on the day designated, and for both reasons should have been rejected.

4. The possession of the claimant of her daughter's estate as guardian, was the possession of the daughter, and immediately upon her marriage vested in her husband, though he had not actually exercised control over it. [8 Porter's Rep. 36; 2 N. & McC. Rep. 151; 1 Hill's S. C. Rep. 191; 2 Murph. R. 351; 3 Litt. Rep. 275; 1 Wash. Rep. 39; 2 Call Rep. 470; 4 Bibb Rep. 174; 4 Ala. Rep. 350; Clancy on Rights, &c. 23, 443; 1 Wms. Ex'rs, 564; 2 Id. 811.] The possession of the guardian is in itself evidence that she assents to the daughter's right to the property, and she was its custodian of it—after the daughter's marriage, in legal contemplation, the possession was transferred to the son-in-law. [1 Bailey Rep. 320; 7 Mass. Rep. 1; 13 Pick. Rep. 206; 12 Id. 173-5; 17 Sergt. & R. Rep. 144; 7 Ala. Rep. 32, 589; 2 Brock. Rep. 285; 1 Paige's Rep. 393, 637; 2 McC. Ch. R.

214, 264-5-7; 2 Johns. Ch. Rep. 62; 2 M. & K. R. 655; Story's Eq. 312-13-14-15, 458, 513-18.]

5. If a guardian purchase property with the ward's money, it belongs to the latter.  [13 Pick. Rep. 272; 17 Sergt. & R. Rep. 144.] And as the guardian is a trustee, he cannot make a contract with his ward, nor with the husband of the latter, if she be a female.  [1 Madd. Ch. 110-11-12; 10 Ves. Rep. 385; 1 McC. Ch. Rep. 389; 1 Edw. Rep. 572; 1 Hop. R. 515; 1 Story's Eq. 312.]

6. The ante-nuptial agreement, under which the claimant pretends to have become the owner of all her daughter's estate is void, because it is not in writing, as required by the statute of frauds; and if it had been written it would be opposed to public policy.  [1 Story's Eq. 312-13-14, 262-7; Story on Con. 126; 1 P. Wms. Rep. 118, 120; 2 Id. 245; Atherly on Mar. Set. 88-9, 90, 133-4, 173-6, 213-14, 220; Roper on H. & W. 307.]

J. A. CAMPBELL, for the defendant in error.  It does not appear in what relation A. S. Jones stood to the claimant, or her daughter, or that he had any agency in the management of the estate of the testator, S. Jones.  His testimony was rightly excluded, as he does not state the grounds upon which his belief was founded.  Besides it was irrelevant.  The property in question never belonged to the father of Mrs. Walker, but had been conveyed by G. J. S. Walker to a trustee, at a sale by whom the claimant became the purchaser; and even conceding that money which had been Mrs. W's previous to her marriage, had been used in the purchase, the legal aspect of the case was not changed.  The belief of a witness unsupported by a statement of the grounds upon which it rests, is inadmissible.  [4 Ala. Rep, 48; 5 Id. 531; 5 Stew. & P. R. 421; 3 Id. 267; Greenl. Ev. 488.]

2. The testimony of the Walkers was clearly admissible —a resulting trust may be established as well at equity as at law by parol evidence.  [Roberts on Frauds, 99, 100; 4 Des. Rep. 491; 1 A. K. Marsh. Rep. 592; 1 Dana's Rep. 536; 1 Johns. Ch. Rep. 582; 2 Id. 409; 3 Paige's Rep. 390; 2 Id. 217.] But the rule which forbids the admission of parol evidence to contradict, or vary a deed, applies only between par-

ties to it—J. V. F. W. had no right to the property he pur-
chased with Mrs. Jones' money—his creditors cannot appro-
priate it to their demands against him; and the claimant not
being a party to the deeds, may show their true considera-
tion.   [5 Ala. R. 531;  10 Johns. Rep. 239;  15 Pick. R. 47;
Greenl. Ev. 318.]

3.  Chandler's testimony, even so far as he testified to rep-
utation, and from information, &c. as to the claimant's wealth
when the truth of it was affirmed from his *own knowledge*,
should have been admitted; but the plaintiffs objected, and
his evidence was rejected,  except as to his individual
knowledge of her resources.   Thus far it was certainly un-
exceptionable.

4.  The plaintiff asked J. V. F. Walker, if the evidence of
his authority to act for Mrs. Jones, was in writing, and when
informed that the witness recollected one letter which recog-
nized his authority, without attempting to state its contents,
the plaintiff then moved to exclude the testimony.   This mo-
tion was rightly overruled, if nothing else had been shown;
but the proof of the loss of the letter was altogether suffi-
cient.   [5 Ala. R. 435;  6 Id. 162, 400, 589.]

5.  In respect to the execution of the commission under
which the testimony of Chandler was taken, a decision of
this court determines that it was regular.   [5 Ala. R. 60.]

6.  The bill of exceptions does not show that any excep-
tion was taken to the charge of the court, but only to the re-
fusal to charge the jury as prayed.   But the ruling of the
circuit court, both in the charges given, and the charges re-
fused, was correct, as will be seen by reference to the argu-
ment I submitted at this term, in the case from the chance-
ry court, between the plaintiffs in error and the defendant and
others.

COLLIER, C. J.—The belief of the witness, A. S. Jones,
that the claimant or her daughter had no other property than
they acquired from the estate of S. Jones, deceased, was
rightly excluded.   It has been repeatedly ruled by this court
that the mere belief or opinion of a witness is not evidence,
but he must state the facts and circumstances upon which
he rests his opinion, or from which he draws his conclusion,

that the jury may understandingly decide for themselves.  [4 Ala. Rep. 48; 5 Id. 531.] Conceding that the witness was the executor of the estate of his father, and his belief of what the claimant and Mrs. Walker received from that source, might perhaps be regarded as his knowledge or recollection upon the subject; yet as it respects their acquisitions from other, or all sources, it would be obnoxious to the objection we have stated.  As to these, his means of acquiring certain information is not shown, and cannot be intended.  In this view of the point, it is not necessary to inquire, whether the evidence was not irrelevant, or whether the plaintiffs could have been prejudiced by its rejection, if the decision was incorrect.

It is admitted, that where there is a written agreement, the law intends that it contains the understanding and meaning of the parties, and as a general rule, it is not permissible to show that it does not contain their entire agreement, or that it contains too much. [1 Ala. Rep. 160; Greenl. on Ev. 318.] But this rule has never been extended, so far as to exclude verbal evidence to raise a resulting trust; and it cannot be endured, that an agent, who uses his principal's money in the purchase of property, can exclude the latter from its enjoyment, by taking a conveyance to himself *eo nomine;* or if he sells, and receives notes payable to himself, that the principal cannot enjoin their collection.  In Jackson v. Mills, 13 Johns. Rep. 463, it was held, that parol evidence was admissible to show, that one man advanced the consideration for the purchase of land, though the deed was taken in the name of another, so as to raise a resulting trust in favor of the former. [See Gardiner Bank v. Wheaton, 8 Greenl. Rep. 373.]

Mr. Greenleaf, in his Treatise upon the Law of Evidence, 318, remarks, that the rule which excludes parol evidence to contradict or vary the terms of a valid written instrument, *is applied only in suits between the parties* thereto; as they alone are to blame if the writing contains what was not intended, or omits that which it should have contained.  It cannot affect third persons, who, if it were otherwise, might be preudiced by things recited in the writings, contrary to the truth, through the ignorance, carelessness, or fraud of the

parties; and who therefore ought not to be precluded from proving the truth, however contradictory to the written statements of others. [See also pp. 26, 203, 236.] The recitals or statements in written agreements, are, as respects third persons, *res inter alios*, and for that reason cannot conclude parties and privies. [See 3 Starkie's Ev. 1051 to 1054, 3 T. Rep. 474; 18 Johns. Rep. 169; 15 Pick. Rep. 47; 4 S. & Port, Rep. 106; 3 Phil. Ev. C. & H's Notes, 1436 to 1448.] Whether moral or legal justice be referred to for the rule of decision, we think it equally clear, that it was competent for the claimant in the case at bar, to show that conveyances made to, and by her agent, were received and made by him upon her account, and though the notes were payable to him individually, that she was entitled to the money to be paid thereon.

The notice states, that the commission under which Chandler's deposition was taken, required that himself and another witness should be examined at a time and place designated, and if the commission should not be completely executed on the day named, then the commissioners were to continue from day to day until its execution was completed. The other witness, the acting commissioner certifies, was examined on the appointed day, and Chandler could not be then examined, because of his engagements elsewhere. We think the certificate of the commissioner being undisputed, must be taken as true; and having attended and performed the duty devolved on him in part, it was competent for him, as the examination could not be completed, to adjourn it to the succeeding day. If the first day had been entirely occupied in examing the first witness, there would be no ground for the objection we are considering, and we think the power conferred by the commission, not only authorized an adjournment in that case, but also, where, from any cause, the commissioner could not examine the witness. This conclusion seems to us so reasonable in itself, and so entirely in harmony with previous decisions, that we will add nothing more upon the point. [9 Porter's Rep. 157; 3 Ala. Rep. 60.]

The court not only directed the jury to disregard every thing that this witness stated upon hearsay, or information received from others, but to prevent misapprehension on the

part of the jury, caused it to be so noted on the deposition, and a pencil mark to be drawn across the part rejected. Thus far, at least, there is nothing to which the plaintiffs' counsel objects; but he insists the court should have gone farther, and excluded every thing the witness said in respect to the extent of the claimant's property, even where he spoke from his own knowledge. The plaintiffs had endeavored to show that the claimant was a lady of means too limited to have purchased so much property as she now claims to be the proprietor of. This evidence being admitted, it was clearly competent to prove the reverse, and we can conceive of no mode of proving it more unexceptionable, than by the positive assertion of a witness, who declares what he professes to know. Such was the character of the testimony in question, as it was permitted to go to the jury.

In respect to the proof of J. V. F. Walker's agency, so far as it concerns the present controversy, it is immaterial whether it was created in writing, or by a verbal appointment, the legal rights of the parties are the same. In answer to a question proposed by the plaintiffs, he stated among other things, that he had a recollection of one letter, in which he received a remittance by a check, or draft, written on a sheet of paper, and directions or instructions as to the use of it below. This answer amounted to nothing more than saying, the witness remembered one letter received from his principal, in which she recognized his agency, with this difference, he stated the form in which it was done. We cannot regard this as a verbal disclosure of the contents of the letter—the amount, date, character of the draft, &c., or the substance of the accompanying instructions are not stated. But we need not consider this point, for it is perfectly clear, upon the authority of this and other courts, that the testimony as to the loss of the letter was sufficient to let in secondary evidence of its contents.

The question of marital rights, the effect of the ante-nuptial agreement, and the rights of the creditors of the husband to subject the property of his wife, which he has not reduced into possession, to the payment of their debts, was considered at length in Andrews & Brothers v. Jones, et al. at this term, (p. 400.) In that case we decided that the creditors

had no greater right to the property of the wife not reduced to possession than the husband had; that the latter had no title to it, and conse quently it was not chargeable with his debts. That whether the ante-nuptial agreement was binding upon J. V. F. W. and wife, if they were unwilling to abide by it, was an immaterial inquiry; for until they dissented from it, and the husband acquired dominion over it, it could not be seized and sold under an execution in favor of his creditors; that it was a disclaimer on the part of the husband of title and possession of whatever the claimant had in her hands, as the guardian of her daughter, and until dissented from by the husband, and set aside, must be regarded as operative.

There was no proof in the case before us, to show that J. V. F. W. was in possession *quasi* husband of any portion of his wife's estate. True, he had the six slaves, but he held these as the agent of the claimant, her guardian.

From the view we took of the law in the case cited, it is clear, that the circuit court did not err in refusing to charge the jury as prayed by the plaintiffs' counsel. As applied to the evidence in this case, the prayer for instructions asserted legal propositions which could not avail the plaintiffs.

The bill of exceptions affirms that no point was reserved upon the charges given. But conceding that they are severally excepted to, we do not discover any error that will avail the plaintiffs, whether abstractly considered, they lay down the law correctly or not. The fairness of the purchase of the slaves in question, by the defendant in execution, whether upon his own account or the claimants, with his funds or her's, in whole or in part; whether his agency was not simulated, and the claimant had not lent her aid to cover his wife's estate for the benefit of himself and family, and thus defeat his creditors, were questions distinctly referred to the jury, with instructions, if they should find affirmatively, to return a verdict for the plaintiffs. Upon the whole, we can discover no available objection to the ruling of the circuit court, and its judgment is therefore affirmed.