Proctor v. Cole.

No. 11,802.

PROCTOR v. COLE.

JUDGMENT.—*Contempt.*—*Estoppel.*—A proceeding against a party for contempt in violating a restraining order does not involve the merits of the legal controversy between the parties, and it is only where the merits are involved that a judgment will operate as an estoppel.

EVIDENCE.—*Declarations of Assignor of Promissory Note.*—The declarations of an assignor of a promissory note, made after he has parted with title and possession, are not admissible against his assignee.

PROMISSORY NOTE.—*Bona Fide Holder.*—*Nominal Consideration.*—The mere nominal consideration of one dollar is not sufficient to constitute a person a *bona fide* holder of a note.

SAME.—*Equitable Assignment.*—As against one who has a prior equitable assignment, a party who has paid merely a nominal sum for a promissory note, and agreed to pay a sum equal to the half of the proceeds that he may realize from it, is not a good faith holder of the note.

SAME.—*Set-Off.*—*Mutuality.*—Mutuality is essential to the validity of a set-off, and the claim asserted as a set-off must be held by the party who pleads it, and not by him and another jointly.

SAME.—*Equitable Consideration.*—*Husband and Wife.*—*Parent and Child.*—The promise of á husband, who has borrowed money from his wife, to pay it to her children, is an equitable consideration which will support the assignment of a promissory note from the husband to one of such children.

HUSBAND AND WIFE.—*Contract to Repay Money Borrowed from Wife.*—*Performance.*—*Equity.*—A husband may not only voluntarily perform a contract to repay money borrowed from his wife, but equity will compel performance.

PARENT AND CHILD.—*Promissory Note.*—*Assignment.*—*Consideration.*—A son may lawfully assist his father in conducting a litigation with his money, time and services, and a debt so incurred by the father will constitute a valid consideration as against his creditors for the transfer of a promissory note to the son.

From the Elkhart Circuit Court.

*J. M. Vanfleet,* for appellant.

*J. H. Baker* and *F. E. Baker,* for appellee.

ELLIOTT, J.—The appellant's complaint alleges that three promissory notes were by him executed to Henderson Cole, on the 31st day of January, 1880; that, on the 25th day of February, 1880, he purchased of Mrs. S. A. Wells a note ex-

·ecuted by Henderson Cole; that at the time he purchased this note he had no notice that Henderson Cole had transferred any of the notes executed to him by the appellant; that, on the same day, he brought suit against Henderson Cole and obtained an order restraining him from transferring any of the notes; that after the order had been served on Henderson Cole he endorsed the notes to the appellee, who received them with knowledge of the appellant's defence and ·of the restraining order.

The complaint, as originally drawn, charged that the appellant filed a complaint and affidavit against Henderson ·Cole and the appellee, asserting that they had violated the restraining order; that ·the parties named appeared and attempted to show cause why they should not be punished; that such proceedings were had that the court adjudged that Henderson Cole and Erastus B. Cole were guilty of a contempt of court in violating the restraining order, and that they should both be placed in custody until they turned over to the clerk the notes or their proceeds. On motion of the appellee, that part of the complaint which sets forth the proceedings relative to the arrest and punishment of the appellee and Henderson Cole was struck out.

It is contended with great earnestness, that the ruling on the motion to strike out part of the appellant's complaint was erroneous. The argument upon this point rests on the assumption that the order of the court adjudging the appellee ·and Henderson Cole guilty of contempt adjudicated the question of the right of the former to enforce collection of the notes assigned to him. This assumption is groundless. An order declaring a party guilty of contempt is not such a judgment as concludes him from maintaining an action upon a claim asserted against the party at whose instance the attachment for contempt was issued. A proceeding against a party for contempt does not involve the merits of the legal controversy, and it is only where the merits are involved that a judgment will operate as an estoppel. Bigelow Estoppel,

37; Freeman Judgments, sections 325, 326; Wells Res Adjudicata, section 440.

In proceedings against a party for contempt, the controversy between the litigants can not be determined, for there can be no issue formed that will enable the court to pronounce a judgment upon the merits. The jurisdiction to punish contempts is given for the purpose of enforcing the orders of the court and of securing that respect which the law intends that it shall command. The object of punishment is not to adjudicate upon private controversies, but to vindicate the authority and dignity of the court. A party may be guilty of contempt and yet possess a clear legal right, and in adjudging him guilty of contempt the court does not and can not adjudicate upon his legal rights. The investigation in such a case stops when it is ascertained that a contempt was committed, and nothing more is or can be concluded by the order of the court. It is not simply because a proceeding in a matter like that set forth in the rejected part of the complaint is summary or special that a judgment is not conclusive, but because in such a matter no judgment can be rendered that will determine the rights of the parties.

The facts developed by the evidence are substantially these: On the 23d day of February, 1880, Henderson Cole assigned the notes executed to him by the appellant to the appellee. The assignment was not written on the notes, but was contained in a separate instrument. At the time the assignment was written, the notes were in the hands of the attorney of the assignor for safe-keeping, and an order was drawn on the attorney to deliver them to the appellee. The restraining order was issued in a suit brought by the appellant against Henderson Cole to restrain the transfer of the notes, and was served on him on the night of the 25th of February; on the morning of the 26th, before the appellee obtained possession of the notes, he was informed that some sort of a suit had been instituted against his assignor by the appellant. On the day last mentioned, the appellee obtained possession of the

notes, and they were then endorsed to him in due form. The appellant, on the 25th day of February, 1880, two days after the assignment of the notes executed by him, obtained from Mrs. S. A. Wells a note executed by Henderson Cole, the appellee's assignor; for the note acquired from Mrs. Wells, the appellant paid one dollar and agreed to give her a sum equal to half of whatever sum he might realize from the note.

On the trial the appellant offered to prove statements made by Henderson Cole, the appellee's assignor, on the 25th day of February, 1880. The court did right in excluding these statements. The declarations of an assignor made after he has parted with title and possession are not admissible against his assignee. In this instance there was a written instrument transferring title, and as the notes were in the possession of an agent, the agent held the notes after the transfer for the person to whom they were assigned. Both title and possession, therefore, passed to the assignee. The case falls fully within the rule that the declarations of the assignor made after assignment are not competent against the person to whom the assignment transferred title. *Harcourt* v. *Harcourt*, 89 Ind. 104; *McConnell* v. *Hannah*, 96 Ind. 102.

What we have said on the motion to strike out part of the complaint disposes of the question presented by the offer to introduce in evidence the record of the proceedings in the matter of the contempt prosecuted against the appellee and his assignor.

It is argued that commercial notes can not be transferred so as to cut off a *bona fide* set-off acquired before the maker of the notes had notice of the transfer unless there has been a regular transfer by endorsement. We do not regard the appellant as a *bona fide* holder of the note transferred to him by Mrs. Wells, for the reason that he had not paid value before notice of the transfer. Our cases have steadily held that in order to constitute a person a *bona fide* holder of a note, or a *bona fide* purchaser of property, it must appear that he paid value before notice of the equities of the party who asserts a

claim to the note or property. *Anderson* v. *Hubble,* 93 Ind. 570 (47 Am. R. 394, and authorities cited); *Anderson* v. *Wilson,* 100 Ind. 402. The consideration of one dollar is a mere nominal one, and a nominal consideration does not make the person who pays it a purchaser for value. The agreement to pay one-half the proceeds that might be realized is a venture approaching very near a mere wagering contract; at all events, it is not such an agreement as will create a right against prior equities.

The counsel for appellant argues that the appellee must suffer defeat because he was not a purchaser for value and the owner of a legal title to the notes before the appellant obtained the note pleaded as a set-off. So far as the argument assumes that the appellee was not a holder for value, it rests upon an erroneous assumption of fact, and so far as it asserts that unless he was a holder for value he can not defeat the appellant's set-off, it cuts against the counsel with fatal effect. We agree that if the appellee is not a holder for value he can not defeat an equitable set-off, and we accept as correct the doctrine of the cases of *Heck* v. *Fink,* 85 Ind. 6, and *Murray* v. *Ballou,* 1 Johns. Ch. 566; but we do not agree that he did not have a prior equity, for we are clear that he did have an equity that only a set-off acquired in good faith, without notice, and for a valuable consideration, can defeat. The assignment to him was an equitable one, and vested in him as the assignee an equitable title that can not be defeated except by one holding either superior or prior legal or equitable rights. *Board, etc.,* v. *Jameson,* 86 Ind. 154, see p. 165. For the reason that the appellant's claim is later in point of time, and was not acquired for a valuable consideration paid before notice of the assignment, he can not prevail against the prior and superior equities of the appellee.

In the case of *Tinly* v. *Martin,* 80 Ky. 463, the question decided was in principle precisely the same as that involved in the case in hand, and the court there said, of such a contract as that made by the appellant with Mrs. Wells, that

"Such contracts ought not to be favored by either the chan-
cellor or common law judge; but where the debtor is alone
involved, it may be that he will not be heard to complain for
being compelled to discharge a debt he justly owes." The
holding in that case was, that "A court of equity, where the
rights of others than the obligor in the note intervene, will
not sanction such a speculation by aiding the party making the
venture to defeat a clear and acknowledged equity." In prin-
ciple the case of *Claflin* v. *Dawson*, 58 Ind. 408, is the same
as the case referred to, and it is strongly in point in the pres-
ent case.

The note which the appellant seeks to make available is
not his sole property, if, indeed, he has any property in it at
all. He agreed with Mrs. Wells that he would pay her half
the proceeds that should be realized, "either directly by col-
lection, or indirectly by way of set-off." This left in Mrs.
Wells a real and substantial interest in the claim. "Equity,"
as the old maxim says, "looks through form to substance,"
and the substance of this agreement is, that Mrs. Wells shall
receive one-half of the proceeds of the note. The nominal
title to the note is in the appellant, but at least half of the
real interest in the note is in Mrs. Wells. The nominal title
of the appellant is but the shadow, while the right to the pro-
ceeds of the claim is the substance. A mere shadow does not
vest a real interest; the substance carries the interest. The
language used in *Claflin* v. *Dawson*, *supra*, applies here with
great force. "It would be a strange perversion, as it seems
to us," said the court in that case, "of the equitable grounds
in which the law of set-off had its origin, to give judicial
sanction to the appellant's claim in this case to set off the
Perry account against the appellee's cause of action. The ap-
pellant never 'held' the account assigned to him by Perry as
the actual and unqualified owner thereof; and, as we con-
strue the provisions of our code on the subject of set-off, the
object and purpose thereof were the protection and defence
of the *bona fide* owners of cross-demands." The assignment

of the note relied on as a set-off did not make the appellant the real party in interest, as to the entire proceeds of the note; the utmost that can be granted is that he became the owner of one-half of the proceeds, and no more. If Mrs. Wells was entitled to one-half the proceeds she is to that extent a real party in interest. *Board, etc.,* v. *Jameson, supra,* and authorities cited.

Conceding, but by no means deciding, that the appellant has a real interest in one-half of the avails of the note obtained from Mrs. Wells, he is still not in a position to defeat the appellee. This we affirm, because he can not use a note in which another has an interest as a set-off. Our decisions are uniformly to the effect that the claim asserted as a set-off must be held by the party who asserts it, and not by him and another jointly. Mutuality is essential to the validity of a set-off. *Griffin* v. *Cox,* 30 Ind. 242; *Booe* v. *Watson,* 13 Ind. 387; *Blankenship* v. *Rogers,* 10 Ind. 333; *Johnson* v. *Kent,* 9 Ind. 252; *Carter* v. *Berkshire,* 8 Blackf. 193; *Richardson* v. *St. Joseph Iron Co.,* 5 Blackf. 146. There are cases where the want of mutuality will not defeat a set-off; but such cases are those, and those only, in which it is necessary to allow the set-off in order to prevent irremediable injustice. *Cosgrove* v. *Cosby,* 86 Ind. 511; *Wulschner* v. *Sells,* 87 Ind. 71, see p. 75. This is not such a case, for the equities are strongly against the appellant, who holds by virtue of a contract not favored in law the claim asserted as a set-off, and urges it against one who has the clear prior equity arising from an equitable assignment.

It is insisted that under the statute a set-off will prevail against a mere equitable assignment, and we are referred to *Le Due* v. *First Nat'l Bank,* 16 N. W. Rep. 426, and *Bone* v. *Tharp,* 18 N. W. Rep. 906, and to section 276 of the code. We do not deem it necessary to decide this question, although it is argued by appellee's counsel, who refer to *Hankins* v. *Shoup,* 2 Ind. 342; *Beard* v. *Dedolph,* 29 Wis. 136; *Baker* v. *Arnold,* 3 Caines, 279; 1 Parsons Notes and Bills, 278,

and Daniel Neg. Inst., section 745. Whatever may be the law on this subject the appellant is not in a situation to defeat the appellee, for, as we have already shown, the equities of the latter are prior in point of time and superior in rank. Counsel refers us to *City Bank of New Haven* v. *Perkins,* 29 N. Y. 554, *Sullivan* v. *Bonesteel,* 79 N. Y. 631, and *Rogers* v. *Squires,* 98 N. Y. 49, and, building upon these cases, argues that it is no concern of the appellee whether the title to the note pleaded as a set-off is good or bad. We think otherwise. The appellee is not, as in the cases cited, the maker of the note, but is an assignee endeavoring to make good his claim against the maker of the note, and it is the maker who is endeavoring to defeat the assignee. Whether the maker can make good his set-off depends upon how he acquired the note pleaded as a set-off and the character of his title to it, so that the question vitally concerns the appellee.

Judgment affirmed.

MITCHELL, C. J., did not take any part in the decision of this case.

Filed Oct. 29, 1885.

### ON PETITION FOR A REHEARING.

ELLIOTT, J.—It is assumed by the counsel of the appellant, that we did not correctly understand or state the effect of the contract between his client and Mrs. Wells respecting the purchase of the note executed by Henderson Cole. The counsel is in error. We did understand, and we do still understand, that the agreement was to pay one dollar to Mrs. Wells and a sum equal to one-half of the amount that might be realized directly by collection or indirectly by way of set-off from the note assigned to the appellant. We thought, and do still think, that a real, substantial interest was left in Mrs. Wells. She was the party, not the appellant, who would be the loser of a substantial sum in the event of the failure of his scheme, for all that the latter actually put in jeopardy was the trifling sum of one dollar. It

is perfectly clear that there was an actual and real interest in Mrs. Wells, since success would yield her a large sum and defeat keep it from her; while all the actual loss that defeat would entail upon the appellant would be the insignificant sum he had paid her.

The discussion in our former opinion was not addressed to the question of what interest qualified a party to prosecute an action as plaintiff, for no such question was involved. The question we were there discussing was: What interest must the maker of a promissory note, who seeks to defeat an action prosecuted by the equitable assignee of that note, show in a promissory note executed by the plaintiff's assignor, in order to entitle him to make it available as a set-off? We said in our former opinion that "We do not regard the appellant as a *bona fide* holder of the note transferred to him by Mrs. Wells, for the reason that he had not paid value before notice of the transfer." This was the real point in the discussion, and we do not deem it necessary to again review the authorities or discuss the question, but adhere, without doubt of its correctness, to our decision upon this point. To our minds it appears incontestably true that, as against one who has a prior equitable assignment, a man who has paid a purely nominal sum for a promissory note and agreed to pay a sum equal to the half of the proceeds that he may realize from it, is not a good faith holder of the note. Although the technical title to the whole of the note was in the appellant, still, in equity, the    bstantial interest in one-half of it was in Mrs. Wells, at least as against one possessing such prior rights as the appellee did possess; the only doubt is, whether as against such an equitable assignee as the appellee, the appellant has any interest at all in the note. If, however, one-half interest was in the appellant and the other in Mrs. Wells, then, under the authorities cited, the appellant, even if he had been a good faith holder of the one-half, could not have used it as a set-off because of the absence of the essential element of mutuality. The question, as we said

in our previous opinion, is not between the maker of the note and the payee, but between the maker and an equitable assignee of the payee, and the material inquiry is, what must the maker show to defeat the prior and superior equities of the assignee? It seems plain to us that in order to defeat the claim of such an assignee the maker of the note must show, not simply a technical right to the note he asserts as a set-off, but a clear equity or right to all the note. In this respect the appellant fails; he does not show a clear equity to all the note he asserts as a set-off. A court of equity will examine the merits of a transaction, and will give heed to the substance and not the form, and when this is done here it will be found that the appellant is not, in equity, a good faith purchaser of the whole interest in the note, if, indeed, he is a purchaser of any interest at all as against one claiming through a prior equitable assignment. Reflection has strengthened our confidence in our conclusion that, as against an equitable assignee such as the appellee is, the appellant acquired an interest in the note assigned to him by Mrs. Wells to the extent of only one dollar, and, as this is but a nominal sum, all the interest that he acquired was a nominal one. Of course, we do not mean to say, nor have we said, that this would be the rule if the maker were defending on the ground of want of interest in the plaintiff; that, as we said in our former opinion, is not the question here; the question here is, what are the rights of one who has paid a nominal consideration for a promissory note as against an equitable assignee?

It is said by counsel that the appellee paid no consideration for the assignment to him. The evidence is flatly and directly against counsel upon this point. Henderson Cole, the appellee's assignor, borrowed of his wife $3,500, and promised to pay it to her children. The notes were assigned to the appellee pursuant to this promise, and to secure a debt of $800 due him. The promise to the wife was undeniably an equitable consideration, and an equitable consideration will

support a contract. *Goff* v. *Rogers,* 71 Ind. 459; *Brown* v. *Rawlings,* 72 Ind. 505; *Wills* v. *Ross,* 77 Ind. 1, p. 8 (40 Am. R. 279); *Sedgwick* v. *Tucker,* 90 Ind. 271, see p. 281. The authorities upon this subject are collected in an article entitled Equitable Consideration, 15 Central L. J. 386, and will be found to fully sustain our conclusion.

Appellant's counsel is greatly in error in assuming that a husband may not perform a contract to repay his wife money borrowed from her under an express promise to pay it to her. Equity will not only sustain the husband in performing such a promise, but it will coerce him into performance. Kelly Cont. of Mar. Women, 61, 62; Schouler Dom. Relations, section 191; *Sims* v. *Ricketts,* 35 Ind. 181 (9 Am. R. 679).

The wife of Henderson Cole had a right to contract with her husband that the money lent him should be paid to her children. All the elements of a valid contract were present, the consideration, the parties, and the agreement. The fact that the beneficiaries of the promise were the children of the person who advanced the consideration does not change the legal aspect of the case.

Creditors can not compel a husband to reduce his wife's choses in action to possession. *Poor* v. *Hazleton,* 15 N. H. 564; *Marston* v. *Carter,* 12 N. H. 159; *Arnold* v. *Revoult,* 1 Brod. & B. 443; *Barlow* v. *Bishop,* 1 East, 432; *Dennison* v. *Nigh,* 2 Watts, 90; *Skinner's Appeal,* 5 Pa. St. 262; *Parks* v. *Cushman,* 9 Vt. 320; *Short* v. *Moore,* 10 Vt. 446; *Probate Court* v. *Niles,* 32 Vt. 775; *Godbold* v. *Bass,* 12 Rich. 202; *Arrington* v. *Screws,* 9 Ired. 42; *McClanahan* v. *Beasley,* 17 B. Mon. 111; *Winslow* v. *Crocker,* 17 Maine, 29; *Partridge* v. *Havens,* 10 Paige, 618; *Andrews* v. *Jones,* 10 Ala. 460.

This doctrine is founded on solid principle, and is in close harmony with that declared in the cases cited from our own reports. If the appellant had been a creditor of Henderson Cole at the time the agreement was made by the latter with his wife, he could not have compelled him to take her money

from her; and much less reason has he for asserting a right to do so when it appears that he did not become a creditor until after the husband had performed his agreement.

A son may lawfully assist his father in conducting a litigation with his money, his time and his services. Bacon Abridg. Title Maintenance 413; *Board, etc.,* v. *Jameson,* 86 Ind. 154, see p. 162.

The debt incurred by the father to the son was a just one, and he had a right to repay it. The consideration was a legal and a meritorious one. This consideration would alone have supported the transfer of the notes to the appellee. If the father chose to pay his debt to the son by transferring to him the notes executed by the appellant, he had a right to do so, and the transfer could only be impeached by showing fraud on the part of both the father and the son. No such fraud was shown, and the transfer must stand, for the rule is rudimentary that where a valuable consideration is paid for property, the transfer will be upheld unless it is shown that both the assignor and assignee participated in a fraudulent scheme to defraud creditors or other persons.

Petition overruled.

Filed Jan. 20, 1886.