No. 13,342.

BRIGHAM ET AL. *v.* HUBBARD ET AL.

SUPREME COURT.—*Practice.*—*Judgment not Reversed on Weight of Evidence.* —A judgment will not be reversed on the weight of the evidence if there is evidence fairly tending to support it.

DEBTOR AND CREDITOR.—*Preference of Creditors.*—*Husband and Wife.*—A debtor in failing circumstances has a right to prefer some of his creditors, including his wife, as against others, and such preferences will be upheld, if untainted with fraud.

FRAUDULENT CONVEYANCE. — *Husband and Wife.*— *When Court of Equity will not Interfere.*—Where a conveyance from husband to wife is attacked as fraudulent, a court of equity will not interfere to set it aside, where, by such action, no benefit can accrue to the creditors of the former.

From the Henry Circuit Court.

*L. P. Newby* and *J. M. Morris,* for appellants.

*T. B. Redding* and *W. O. Barnard,* for appellees.

ZOLLARS, J.—In December, 1884, Charles S. Hubbard, appellee herein, conveyed real estate to his wife, his co-defendant below, and co-appellee here. Appellants, to whom he was indebted, subsequently instituted this action against him and his wife to set aside the conveyance as fraudulent as to them and his other creditors. The cause was tried by the court and resulted in a finding and judgment in favor of the defendants for costs.

Appellants contend that the judgment is not sustained by sufficient evidence. We have read all of the evidence carefully, and are well satisfied that the judgment can not be reversed by reason of its insufficiency.

It is so well settled by the decisions of this court that a judgment will not be reversed upon the weight of the evidence, if there is evidence fairly tending to sustain it, that it is not necessary to cite cases, nor, indeed, to re-state the rule. Here, the evidence not only tends to sustain the finding and judgment, but makes it quite apparent that the court

below ruled correctly in awarding judgment in favor of appellees for costs. So far as shown by the evidence before us, Charles S. Hubbard, at the time of the conveyance to his wife, was indebted in the sum of about $8,700. If the amount which he and his wife claim he was indebted to her is included, his total indebtedness was about $9,400. Rating the property conveyed to the wife at the value placed upon it by appellants, the total value of his property at that time, above encumbrances, was near $8,000. He was unable to pay his debts at that time—was insolvent. But, notwithstanding that fact, we think that the evidence fails to show that his purpose in making the conveyance to his wife was to defraud his creditors. In the conveyance to her, as in other conveyances made soon afterwards, he preferred some of his creditors as against appellants, but he seems to have been engaged in an effort to pay his debts so far as possible. For example, one piece of property, worth about $600, he conveyed to a creditor to whom he was indebted in that amount. He mortgaged his stock of boots and shoes, of the value of about $5,000, to other creditors to whom he was indebted in that amount. The stock went in payment of those debts. His real estate in Indianapolis was already under mortgage. What became of it is not shown. The probability is that the mortgagees finally took it. At least, he is not shown to have done anything dishonest as connected with it. He had a right to give a preference to some of his creditors, including his wife, as against others, and such preferences will be upheld, if untainted with fraud. *Grubbs* v. *Morris*, 103 Ind. 166; *Hoes* v. *Boyer*, 108 Ind. 494; *Proctor* v. *Cole*, 104 Ind. 373.

If it should be conceded that Hubbard had a fraudulent intent in the conveyance to his wife, there is no evidence at all that she had any notice of such intent. As already stated, at the time of the conveyance to her, he was engaged in selling boots and shoes, and had a stock of the value of $5,-000. She testified that she knew that he was indebted to

Frank White, but there is no evidence that she knew the amount of the indebtedness, or had any suspicion, even, that he was not able to pay it at any time. She was settled in the belief that he had ample means with which to pay all of his debts. We have not been cited to the evidence, and, after a diligent search, have been unable to find any that he was indebted to Frank White in any amount. But if there was such an indebtedness, and she knew of the amount, that alone would not overthrow the conveyance to her. The debt from Hubbard to her being *bona fide,* she had a right to accept a preference. *Dice* v. *Irvin,* 110 Ind. 561 ; *Cornell* v. *Gibson,* 114 Ind. 144.

Hubbard knew that he was insolvent, and in making the conveyance to his wife doubtless intended to give her a preference, as he subsequently preferred other creditors. The conveyance to Mrs. Hubbard seems to have been first suggested by Mr. Butler, a brother-in-law, who was Hubbard's attorney, and knew of his insolvent condition. He suggested to her that she had better have a deed for the property, as she had no security for the amount which her husband owed her, but he did not inform her of her husband's insolvency. He also suggested the matter to Hubbard, and wrote the deed, which was soon after executed.

It is contended by appellants that the price paid by Mrs. Hubbard was inadequate, and that such inadequacy is an evidence of fraud. We do not think so.

In 1857 Mrs. Hubbard received $200 from her father. In 1861 she received the further sum of $100 from him. These sums she turned over to her husband to be used in the construction of the house which was included in the conveyance to her from her husband. It was so used. After her father's death, in 1876, she received $422 from his estate. Of that amount she again turned over to her husband $122, to be used in repairing the property, and it was so used. For the balance—$300—he gave her his note, drawing six per cent. interest.

It is not necessary for us to decide whether or not Mrs. Hubbard could have coerced a payment to her by her husband of the amounts thus used in the construction and repair of the house, nor whether or not there was such a moral obligation to pay it resting upon the husband as would have afforded a good consideration for the conveyance to her. See *Sedgwick* v. *Tucker*, 90 Ind. 271, and cases cited ; *Proctor* v. *Cole*, 104 Ind. 373.

If the sums thus used in the construction and repair of the house, with interest thereon, should be charged against Hubbard as a debt due to his wife, his indebtedness to her was at least $700, as she testified it was, at the time the deed was executed. But it is not necessary to charge him with those sums in order to uphold the conveyance, and hence we do not decide the questions above suggested.

So far as concerns the number of witnesses, the preponderance of the evidence is that the property conveyed to Mrs. Hubbard was not worth over $1,000, if, indeed, that much. In support of the judgment, it ought to be assumed that the court below found that the property was not worth over $1,000. The note for $300 was made in 1876. The conveyance was made in December, 1884. From the date of the note to the date of the conveyance, was about eight years. Two years interest had been paid. There was, therefore, about six years interest due which amounted to about $108, making the total amount due upon the note about $408. That was the amount which Mrs. Hubbard paid for the property, leaving out of the calculation the other sums above mentioned. The difference between the amount thus paid, and the value of the property, was $592. But it must be remembered that, under our statute, the wife's one-third interest in the real estate could not have been subjected to sale, and that upon the sale of the property upon execution in satisfaction of the husband's debts, and the making of the deed in pursuance of such sale, she would have been entitled to claim the one-third in severalty. Two-thirds of the prop-

erty only, therefore, was subject to sale upon execution in satis-
faction of Hubbard's debts.   Two-thirds of $1,000 is $666.66.
Hubbard was a married man and a householder, and as such,
under our statutes, was entitled to hold as exempt from exe-
cution property of the value of $600.   Had the property
conveyed to his wife been offered for sale upon execution as
his property, he could have claimed from it, or out of the
proceeds of it, $600.   In ascertaining, therefore, how much
of his property subject to sale upon execution really passed
to his wife by the conveyance to her, her one-third interest
and the amount exempt by law from execution must be
deducted from the value of the real estate thus conveyed.
Adding the wife's one-third, $333.33, to the amount exempt
from execution, and we have $933.33.   There would thus
be left subject to sale for Hubbard's debts only $66.67 in
value.   That would have been all that his creditors could
have reached and held as against the wife's interest and
Hubbard's claim for an exemption.

An execution had been issued against Hubbard's property
prior to the institution of this action, and was levied upon
the personal property which he then owned.   He claimed
his exemption, and the whole of the property so levied upon,
amounting to $319 in value, was set off to him.   Assuming
that if the conveyance to his wife had not been made, the
real estate so conveyed would have been taken under an ex-
ecution, and that Hubbard would have claimed his exemp-
tion from the personal property, as he did, he would still
have been entitled, and would yet be entitled, to claim from
the real estate the difference between $600 and $319, the value
of the personal property so set off to him.   He would thus
have been entitled, and would yet be entitled, to claim from
the real estate $281 in value.   That amount added to the
wife's one-third would make $614.33 to be deducted from
$1,000, the value of the real estate, in order to ascertain just
how much was placed, or was attempted to be placed, beyond
the reach of creditors by the conveyance to the wife.   The

difference between $1,000 and $614.33 is $385.67. Upon the assumption last above, that amount, and that only, the creditors could have reached by legal process had no conveyance been made to the wife.

Without any question, she paid more than that sum for the real estate by the surrender of her note for $300 and the accumulated interest, amounting in all to about $408.

It will thus be seen, also, that no possible benefit could accrue to the creditors should the conveyance to Mrs. Hubbard be set aside. When such is the case a court of equity will not interfere. *Smith* v. *Selz,* 114 Ind. 229.

It is suggested, rather than argued, that the court below erred in admitting certain testimony by Charles Butler. As already stated, he was a brother-in-law of the appellees, and the attorney for Hubbard. In response to a question by counsel for appellee he was allowed to state that prior to the execution of the deed to Mrs. Hubbard he suggested to her that, as her husband was indebted to her, she had better have a deed from him for the property here in dispute. Without examining the question further, it is entirely sufficient to say that the same conversation between Butler and Mrs. Hubbard was drawn out by appellants upon the cross-examination of Mrs. Hubbard. They are, therefore, in no condition to object to appellees bringing forward the same evidence in the examination of Butler. Nor could they have been injured by a reproduction of the facts which they had thus voluntarily elicited in the cross-examination of Mrs. Hubbard.

Having found no error in the rulings of the court below, the judgment is affirmed, with costs.

Filed Sept. 21, 1888.